NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-424

ADOPTION OF AVALYN.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

This case, dispensing with the mother's right to consent to the adoption of her child, involves a number of issues.  The facts and the details of the proceedings are well known to the parties and will not be repeated here, except as necessary to facilitate our discussion of the issues.  Ultimately, because we conclude that allowing the mother's second counsel's motion to withdraw was an abuse of discretion, and holding the trial without her presence or that of any lawyer on her behalf in the circumstances presented here violated her right to due process, we vacate the decree and remand the case for further proceedings.

---

[1] A pseudonym.

1. Background.  The child in this matter, Avalyn, was born in April 2023.  Pursuant to two reports alleging neglect of Avalyn by the mother, see G. L. c. 119, § 51A, the Department of Children and Families ("DCF") filed a care and protection petition and conducted an emergency removal on April 5, 2023. The mother was deemed indigent on April 7, 2023.[2]

On April 28, 2023, the mother filed a motion "requesting to represent [herself] until a lawyer is appointed."  On May 1, 2023, that motion was denied, and on May 26, 2023, counsel was appointed for the mother.

The question of the mother's competence, though never satisfactorily addressed, was raised repeatedly throughout the case in the trial court.  On June 12, 2023, the mother's counsel moved for the appointment of a Guardian ad Litem ("GAL") "in order to represent her interests and to advocate her position, as well as any other issue that may arise during the pendency of this care and protection matter."  That motion was heard on June 14, 2023.  The mother was present, but the relevant discussion was held at sidebar out of her hearing.  The mother's appointed counsel represented that the mother "was found not competent in Worcester District Court.  Her case was recently dismissed . . . [b]ecause she was unlikely to be restored without medication.

---

[2] Avalyn's putative biological father did not establish his parentage and was later stricken as a party to this proceeding.

2

She refuses medication . . . and treatment."  A judge (first judge) allowed the motion, appointing a GAL for the mother, and continued the temporary custody hearing to another date.

The actual physical order of appointment of an attorney as the GAL was dated June 28, 2023, and was signed by a different judge (second judge).  The appointment was made on a court form stating, "You are hereby appointed as a guardian ad litem," followed by a checklist of ten possible categories of appointment.[3]  Two boxes were checked.  One was under the category of "Legal Rights," and the box labelled "Advisor" was checked.  A second box, "Diminished Capacity," which is its own category, was also checked.  The form order also read "SCOPE OF APPOINTMENT: See Juvenile Court Guardian Ad Litem Guidelines."[4]

On August 1, 2023, the GAL filed a motion for clarification of her appointment which the first judge heard on August 7, 2023.  The following colloquy occurred between the judge, the

---

[3] The form read, "(Category of Appointment, Check One)."  No party raises any issue about the fact that two categories were checked on the order.  As this order was the basis for the appointment of the GAL, we treat it as the operative order.

[4] At the bottom of the form, it read **"Note:** This appointment shall not exceed ten hours.  See Juvenile Court Guardian ad litem guidelines for procedure to request additional hours or additional time to file the report."  None of the parties mention this language and we express no opinion about it.  As this and the previous footnote suggest, some modifications to this form by the trial court may be in order.

GAL, the mother's counsel, and DCF's counsel after the GAL asked the judge to clarify the scope of the GAL's appointment:

> THE JUDGE:  "I think it's . . . it's a substituted judgment, maybe?"
>
> MOTHER'S COUNSEL:  "I think at this point, yes."
>
> DCF'S COUNSEL:  "So for my own clarification, and I will ask, does that mean that it's going to be as to competency as well or just substituted judgment?"
>
> THE JUDGE:  "Right now, we don't really have a definitive answer on the competency issue."
>
> DCF'S COUNSEL:  "Right, which was my understanding of what the GAL was for, and I did file a statement stating that because we did go sidebar last time."

The mother's counsel indicated that she had sought the GAL because the mother had been found incompetent in May in the District Court and a different GAL had been appointed there. The GAL reported that the District Court GAL had "the same type of role as advisor, best interest of the client.  And that was what I thought I was doing, your Honor.  My appointment basically was -- advisor was checked off but also diminished capacity.  So I had thought that that's what I was supposed to be doing."  Finally, the judge noted, apparently reading from the motion she had allowed on June 14, that the appointment was "to represent [mother's] interests, navigate her position, as well as any other issue that might arise.  It's pretty broad."

The docket reflects that on August 21, 2023, the mother's counsel filed a motion to withdraw, stating that it was at the

4

mother's request.  The court allowed the motion.  The mother was not present, and no determination was made that she had the capacity to fire her attorney.  See Mass. R. Prof. C. 1.16 comment [6], as amended, 495 Mass. 1302 (2025) (client with "severely diminished capacity . . . may lack the legal capacity to discharge" her lawyer).

Successor counsel was appointed on October 20, 2023.  On October 23, 2023, at the request of successor counsel, a third judge (third judge) altered the appointment of the GAL -- who was unaware that the mother had new counsel.  The judge struck the "diminished capacity" aspect of the appointment, describing it as "more of a substituted judgment appointment," and left the GAL appointed only as an "advisor" GAL.

Critically, on January 19, 2024, the mother's successor counsel filed a motion to withdraw, stating it was based on the mother's request and "an irretrievable breakdown in the Attorney/Client relationship."  Once again, the mother was not present for the hearing.  The judge allowed the motion and ordered that no successor counsel be appointed unless the mother updated her indigency information with the probation department.

The mother did not meet with the probation department or attend any subsequent proceedings, and no successor counsel was appointed to represent her until after the trial.

5

At a pretrial conference on April 22, 2024, at which the mother was neither represented by counsel nor present, counsel for DCF stated, "I think we all agree mother may need some sort of conservator or guardian," but no one sought the appointment of one. Counsel for DCF also asked whether the GAL remained appointed given that the mother had no counsel. The third judge, stated that the GAL had been "identified as a GAL evaluator" and that the judge "would be happy to appoint -- to update her appointment as a GAL for diminished capacity, which gives some more I think functionality and a better match. The issue of competency is always before the court, and I think there's ample evidence in the record to suggest that [the mother] is functioning with a diminished capacity at this time." The judge then ordered the GAL's appointment to be amended to one for diminished capacity.

The third judge held a trial to adjudicate the mother's parental fitness and parental rights in the Holyoke Juvenile Court on October 9, 2024. Once again, the mother was unrepresented by counsel and was not present. The judge noted that the mother had physically appeared in the Holyoke Juvenile Court the day before, and had been handed a summons. A court officer reported that the mother had been ordered to go to probation, but she left before doing so. The judge held the trial even though she recognized that "there [were] reports that

6

[the mother] may have been told to go to Springfield today."
Although the mother's GAL was present, she remained silent during the trial.

After DCF presented its case, the judge found the mother unfit and terminated her parental rights. The mother arrived at the court nine minutes after the trial had concluded.

2. <u>Discussion</u>. To decide this case we need go no further than the withdrawal of successor counsel and the trial in absentia.

With respect to withdrawal of the mother's first counsel, we think <u>Adoption of Valentina</u>, 97 Mass. App. Ct. 130, 135–136 (2020), is instructive. It holds that where an attorney receives no instruction other than to withdraw, the judge should, before ruling on a request to withdraw, "establish on the record that the attorney has made diligent efforts to contact the client such that the lack of instruction is not the result of any lack of reasonable effort by the attorney." <u>Id</u>. at 136

Here, the first counsel's motion to withdraw was allowed in a margin endorsement. The docket reflects that the motion was allowed in the lobby, i.e., without a hearing and outside the

7

presence of any party.  The docket does not identify the judge who allowed it.[5]

On January 22, 2024, successor counsel moved to withdraw, asserting in her written motion that there was an "irretrievable breakdown" in communication with the mother and that the mother was also requesting that counsel withdraw.  The judge held a hearing on the motion, but the mother was not present.  The judge allowed the motion, noting only that the "mother hasn't been present since June 14th of 2023."  The judge did not "establish on the record that the attorney has made diligent efforts to contact the client."  Adoption of Valentina, 97 Mass. App. Ct. at 135-36.  Nor did the judge inquire as to the basis for the breakdown in counsel's relationship with the mother, despite the fact that the mother's competence was repeatedly at issue throughout the case.

On this record, we conclude that the judge abused her discretion by permitting successor counsel to withdraw, particularly where the judge did so outside the presence of the mother and refused to appoint successor counsel without an updated indigency determination.  Of course, "indigent parents have a constitutional right to appointed counsel, if they wish, before their parental rights are terminated."  See Department of

_____

[5] An examination of the signature, however, makes it evident that the third judge allowed the motion.

8

Pub. Welfare v. J.K.B., 379 Mass. 1, 4-5 (1979).  Because the judge did not appoint counsel after allowing the second attorney to withdraw, the mother was unrepresented at trial.  The deprivation of the mother's right to counsel was "presumptively harmful" -- and its consequences so 'pervasive, undetectable, and immeasurable' — that justice requires new proceedings.  Adoption of Gabe, 84 Mass. App. Ct. 286, 293-294 (2013) (ordering new trial on termination of parental rights).  See Doe, Sex Offender Registry Board No. 209081 v. Sex Offender Registry Board, 478 Mass. 454, 466 (2017).  See also Adoption of Gabe, 84 Mass. App. Ct. 293 (structural error doctrine "does not control civil issues.  However it affords a useful analogy.  Structural error is presumptively harmful because its consequences can be pervasive, undetectable, and immeasurable.  The loss of the assistance of competent counsel illustrates those risks.  One can never reliably measure the harm resulting from the absence of effective assistance.  We cannot know the specific value of a capable advocate to the [mother's] case").

Second, even if allowing counsel to withdraw was proper, the judge erred in adjudicating the mother's fitness and parental rights when she was not present in the circumstances presented here.  The mother has a due process "right to participate" in a termination proceeding given how much is at stake.  Adoption of Patty, 489 Mass. 630, 641 (2022).  A

9

termination hearing may proceed in a represented parent's absence where she voluntarily fails to attend without explanation, of course. See, e.g., Adoption of Talik, 92 Mass. App. Ct. 367, 371 (2017) ("an adverse inference may be drawn against a parent who, despite having received notice, is absent from a child custody or termination proceeding"). But the mother here was unrepresented, her absence was not unexplained, and the judge did not find that she had abandoned the proceedings. Indeed, the judge was aware she had come to the court in error the previous day. Most importantly, the judge was aware of reports the mother had been told to go to the wrong courthouse on the day of trial. Nonetheless, the judge proceeded with the in absentia trial, and did not reopen it when the mother actually arrived in the courtroom nine minutes after the trial ended. The mother thus was deprived of due process.

Consequently, the decree must be vacated and the case remanded for appointment of counsel and a new trial.[6]

---

[6] In light of our decision, we need not reach the other issues raised by the mother.

We express no opinion on the proper procedure for addressing issues of the mother's competence on remand. In the event that her counsel raises her competence and a judge is inclined to appoint a GAL, we note that the GAL here was not appointed consistently with the  Juvenile Court Guidelines for Guardians Ad litem (2015 & updates 2025) (Guidelines), or the Juvenile Court's Uniform Practice and Procedure Regarding the Appointment of Guardians Ad Litem (2015 & updates 2024) (Uniform Practices).

10

Among other things, the Guidelines list the categories of GALs that are reflected in the boxes on the form order used in the appointment of the GAL in this case. Under the category of GALs for "Legal Rights," the Guidelines provide that a GAL in this category "is appointed to enforce and defend the child's legal rights and does not include appointment as the child's attorney." Guidelines § III (D).

Under the subcategory for "Legal Rights/Advisor" -- one of three subcategories of Legal Rights GALs, and the one checked on the order by the judge -- the Guidelines state that the appointment may include authority to,

> "Advise the child on matters arising in delinquency and youthful offender cases (e.g., waiver of right to a jury trial, tender of plea), in the absence of a parent or interested adult, to the same extent and in the same manner as the parent(s) or interested adult whose responsibility it is to consult with and advise the child. Therefore, the appointment does not extend to the actual assertion or waiver of the child's constitutional rights. The child asserts or waives his or her rights after consultation with the GAL." Id. at § III (D) (3).

Under the category of GAL for "Diminished Capacity," the other box checked by the judge, the Guidelines provide,

> "a GAL in this category is appointed at the request of the attorney for an adult party, in civil matters to direct the attorney in the representation of the adult party after the judge has determined that the adult is unable to assist his/her attorney in the preparation and/or presentation of the case. This appointment does not extend to the actual assertion or waiver of the adult's constitutional rights." Id. at § III (F).

Under duties and responsibilities, the Guidelines provide that, a GAL for diminished capacity "must: 1. Speak with the adult; 2. Consult with the adult's attorney; [and] 3. Consult/speak with others, if appropriate, who may have relevant information." Id.

To the extent, if any, the judge intended to appoint the GAL as an evaluator, as suggested by the docket entry, the guidelines provide that "a GAL in this category is appointed to

11

So ordered.

By the Court (Rubin,
 Brennan & Wood, JJ.[7]),

*Paul Little*

Clerk

Entered:  July 15, 2026.

---

report on a narrowly defined issue where the judge deems an updated court investigation is not appropriate and where the appointment does not fall into one of the other categories of GAL appointments."  Guidelines, § III (E).

The Uniform Practices enumerates "[q]ualifications for guardian ad litem categories."  For a "Diminished Capacity" or "Evaluator" GAL, the requirements include appointment of "an individual with a Masters degree or higher degree who holds a Massachusetts license in social work, counseling psychology or clinical psychology," Id. § III (G), and, for an Evaluator, the GAL must meet certain other specific qualifications.

[7] The panelists are listed in order of seniority.